UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

A.N.A, by and through her parent and
next friend, S.F.A., et al.                                                     PLAINTIFFS

v.                                                                       CIVIL ACTION NO. 3:08-CV-4-S

BRECKINRIDGE COUNTY BOARD OF EDUCATION, et al.      DEFENDANTS

## MEMORANDUM OPINION

This is an action brought under 42 U.S.C. § 1983 challenging the legality of a Breckinridge County Middle School ("BCMS") program offering students the option to participate in single-sex classes. This matter is presently before the court on the motions of the Breckinridge County Defendants[1] to dismiss the class action representatives for lack of standing,[2] (DN 219) and for summary judgment on the claims of the individual plaintiffs[3] for damages for the 2007-2008 school year (DN 223).

---

[1] Breckinridge County Board of Education; Breckinridge County Middle School Site Based Decision Making Council; Breckinridge County School District Superintendent Evelyn Neely; Breckinridge County School District Assistant Superintendent Janet Meeks; Breckinridge County Middle School Principal and Chairperson of the Breckinridge County Site Based Decision Making Council Kathy Gedling; and Breckinridge County Middle School Site Based Decision Making Council Members Lisa Chandler, Albert Hotlzman, Ann O'Connell, Tara Hinton, and Deborah Anthony, each in their official and individual capacities, are collectively referred to as the "Breckinridge County Defendants" or "defendants."

[2] This is, in fact, a summary judgment motion brought pursuant to FED. R. CIV. P. 56 and will be analyzed under that standard.

[3] Individual plaintiffs A.N.A., S.E.A., J.J.N., K.A.S., Z.H.S., and S.L. seek damages for the 2007-2008 school year. J.J.N., K.A.S., and S.E.A. are also class representatives for one or more subsequent years. The standing analysis thus applies to the latter three individuals. However, for purposes of completeness, the claims of J.J.N., K.A.S., and S.E.A. for damages will also be addressed herein. The standing motion does not address the claims of Z.H.S. or S.L. particularly, but to the extent the analysis regarding standing addresses legal arguments applicable to Breckinridge County Middle School students generally, it applies also to Z.H.S. and S.L. Their claim for damages for the 2007-2008 school year is also addressed herein.

## I. Background

BCMS is a public school of approximately 600 students, both male and female, in grades six through eight, located in Harned, Kentucky. BCMS receives state and federal funding through the Breckinridge County School District, and is thus subject to the requirements of Title IX and other regulations. Plaintiffs[4] filed this action against the Breckinridge County Defendants claiming that the single-sex education program utilized at BCMS in the 2007-2008 school year was in violation of both state and federal law. They seek damages for what they allege was unlawful sex discrimination during the 2007-2008 school year. Additionally, Plaintiffs claim that the single-sex program for the 2008-2009 and 2009-2010 school years also violated federal and state law.[5] The plaintiffs seek only declaratory and injunctive relief for claims after the 2007-2008 school year.

The court certified four subclasses of plaintiffs challenging the 2008-2009 and 2009-2010 programs in which students were permitted to choose whether to participate in one or more single-sex classes offered at BCMS. The subclasses consist of those students enrolled in Breckinridge County Middle School who chose to participate in one or more single-sex classes for the 2008-2009 school year (Subclass 1) and the 2009-2010 school year (Subclass 3), and students who chose to participate solely in coeducational classes for the 2008-2009 school year (Subclass 2) and the 2009-2010 school year (Subclass 4). The defendants contend that the plaintiffs have failed to demonstrate (1) a redressable injury-in-fact suffered by designated subclass representatives J.J.N., K.A.S., and S.E.A., (2) causation or (3) gender discrimination. Thus, they urge that the requirements of standing

---

[4]This action was filed by A.N.A. and S.E.A. by and through their parent and next friend, S.F.A.; Z.H.S. by and through his parent and next friend, S.S.; S.L. by and through her parent and next friend, C.L.; J.J.N. by and through his parent and next friend, J.J.N.; and K.A.S. by and through her guardian and next friend, J.J.N., collectively referred to herein ans "plaintiffs."

[5]The plaintiffs have not sought to certify subclasses for the 2010-2011 school year, which has concluded.

have not been met and the class action claims must therefore be dismissed. The defendants also urge dismissal of Subclass 3, as subclass representative G.J. was voluntarily dismissed from this action on October 7, 2009 and no subclass representative has been named in his place.

S.E.A. is the Subclass 1 and 4 representative. She represents BCMS students who chose to participate in one or more single-sex classes in 2008-2009. She was assigned to a single-sex related arts class in 2007-2008.[6] Thereafter, she chose enrollment in a single-sex related arts class for 2008-2009.[7] She also represents Subclass 4 consisting of students who participated solely in coeducational classes in 2009-2010, as she enrolled in all coeducational classes for that year.

J.J.N. and K.A.S. are representatives for Subclass 2, representing all BCMS students who participated solely in coeducational classes in 2008-2009. In 2007-2008, J.J.N. chose to participate in a single-sex class for a short period of time. He requested and was transferred out of the class to a coeducational class after approximately one month. He chose to participate solely in coeducational classes in 2008-2009. K.A.S. was assigned to a single-sex related arts class in 2007-2008, but chose all coeducational classes for the 2009-2010 school year.

Three of the plaintiffs, A.N.A., Z.H.S. and S.L., were in eighth grade in 2007-2008 and thus were affected by the program during only one of the years in issue in this suit. The 2007-2008 school year was the only school year which began without parents being afforded the opportunity to make an election for their children not to participate in single-sex classes.

---

[6]"Related arts" at BCMS consists of four rotating topics (art, enrichment, music and PE) during one period for nine weeks each. S.E.A.'s claim for damages for the 2007-2008 school year is addressed later in this opinion.

[7]To the extent that this opinion states that these minor students "chose" various programs of study in any given year, the court is referring to choices indicated by parents on behalf of their minor children. As these students of tender years must rely upon their parents to make legally binding educational decisions for them, they have also initiated suit by and through their parents. The minor class representatives were deposed and questioned concerning their experiences in school which relate to their claims of injury. However, the extent to which the students themselves were or were not involved in the decision-making process concerning whether to participate in single-sex or coeducational classes is of no moment. Rather, it is the choice communicated by parents to BCMS that is of importance in this decision.

A.N.A. and Z.H.S. were initially assigned to single-sex math classes for the 2007-2008 school year. When given the option to move to coeducational classes approximately three weeks later, they chose to remain in the single-sex class.

S.L. chose to enroll in coeducational classes for the 2007-2008 school year. Approximately three weeks later when given the option to move to single-sex classes, she chose to remain in coeducational classes.

The plaintiffs have alleged that the BCMS program, purportedly designed in accordance with the provisions of 34 C.F.R. § 106.34 (2007), violates Title IX, 20 U.S.C. § 1681(a); the Equal Education Opportunities Act, 20 U.S.C. § 1705; the Equal Protection Clause of the United States Constitution, and the Kentucky Sex Equity in Education Act, KRS 344.555.

The court dismissed claims asserted against Federal Defendants United States Department of Education ("DOE") and former United States Secretary of Education Margaret Spellings for failure to state a claim upon which relief may be granted (DN 123) and then certified this matter as a class action (DN 125).

**II. 2008-2009 and 2009-2010 Class Claims**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact arises when there is "sufficient evidence on which the jury could reasonably find for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The evidence presented must be construed in the light most favorable to the non-moving party. *Blakeman v. Mead Containers*, 779 F.2d 1146, 1150 (6th Cir. 1985).

Under Article III of the Constitution of the United States, federal courts have jurisdiction

only over "actual cases or controversies." *See McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997); *see also* U.S. CONST. art. III, § 2. The power granted to this court by Article III "is not an unconditioned authority to determine the constitutionality of legislative or executive acts. The power to declare the rights of individuals and to measure the authority of governments . . . 'is legitimate only in the last resort, and as a necessity in the determination of real, earnest, and vital controversy." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982).

In order for a case to fall within Article III's jurisdictional grant, the party bringing it must have standing to do so. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must satisfy three elements. First, the plaintiff must show an injury in fact, which is an invasion of a legally protected interest that is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* (citations omitted). Second, the plaintiff must show a causal connection between the injury and the conduct complained of. *Id.* Finally, the plaintiff must show that it is "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 561 (citations omitted).

The party invoking federal jurisdiction has the burden of establishing these elements. *Id.* (citations omitted). Each element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Where, as here, the plaintiff's standing is being challenged on a motion for summary judgment, the plaintiff may not rest on "mere allegations," but must set forth "specific facts" demonstrating that the elements of standing have been met. *Id.* These facts will be taken as true for the purposes of the summary judgment motion. *Id.*

**A.**

In attempting to identify an injury in fact, the class representative plaintiffs (hereinafter "plaintiffs") urge that all BCMS students are injured by being required to attend a public middle school which engages in sex discrimination in education by offering a single-sex program. They urge that because, in their view, single-sex and coeducational classes can never offer substantially equal educational opportunities, the mere exposure to such alleged inequality is injurious to BCMS students.

The plaintiffs paint with too broad a brush. They do not identify specific facts demonstrating that the class representatives (and the students they represent) suffered any concrete and particularized harm to a legally protected interest as a result of the optional single-sex classes at BCMS. Instead, they spend substantial time arguing the general proposition that the coexistence of coed and single-sex classrooms in schools constitutes sex discrimination. This theory, however, finds no support either in law or in the record of this case.

No legal authority supports the conclusion that optional single-sex programs in public schools are *ipso facto* injurious to the schools' students. Unlike the separation of public school students by race, the separation of students by sex does not give rise to a finding of constitutional injury as a matter of law. Individuals are harmed when they attend schools in which students are separated on the basis of race because such separation "generates a feeling of inferiority . . . that may affect [students'] hearts and minds in a way unlikely to ever be undone." *Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483, 494 (1954). This is true even if all other "tangible" factors, such as the schools' physical facilities, are equal. *Id.* at 493. Moreover, because of the inherent harm that arises from educating students in racially separate schools, and because the intent of *Brown* and its progeny

was to create "a unitary, nonracial system of public education," even "voluntary" racial segregation is prohibited.  *See Green v. Cnty. Sch. Bd. for New Kent Cnty., Va.*, 391 U.S. 430 (1968) (finding constitutionally deficient a "freedom of choice" plan that allowed parents to choose which schools their children would attend, with the result that a school district had an all-black school and an all-white school).

No such historically-grounded injury has been recognized as inherent in the separation of students by sex.  The Supreme Court has never held that separating students by sex in a public school – unlike separating students by race – or offering a single-sex public institution is *per se* unconstitutional.  *See United States v. Virginia*, 518 U.S. 515, 533 n.7 (1996) ("We do not question [Virginia's] prerogative evenhandedly to support diverse educational opportunities [such as single-sex schools]."); *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 720 n.1 (1982) ("Mississippi maintains no other single-sex public university or college.  Thus, we are not faced with the question of whether States can provide 'separate but equal' undergraduate institutions for male and females.").  *See also Vorchheimer v. Sch. Dist. of Philadelphia*, 532 F.2d 880, 888 (3d Cir. 1976), *aff'd by an equally divided Court*, 430 U.S. 703 (1977) (holding that a school board's offering of an optional single-sex public school did not violate the Equal Protection Clause).  Therefore, to the extent the plaintiffs attempt to rely on cases that prohibit the separation of students by race, their arguments in favor of an injury in fact fall short.

It is uncontested, of course, that barring students from educational opportunities based on their sex without an exceedingly persuasive justification constitutes an invasion of a legally protected interest.  *See Virginia,* 518 U.S. at 534 (holding unconstitutional Virginia's men-only admissions to the elite "citizen-soldier" corps at the publicly funded Virginia Military Institute);

*Hogan,* 458 U.S. at 733 (holding unconstitutional Mississippi's exclusion of men from a state-funded nursing school). However, the record does not support the conclusion that such a violation occurred because BCMS students were afforded the option of being educated in a single-sex environment.

The plaintiffs repeatedly refer to "exclusion" and "discrimination" in their briefs, but we have been shown no evidence of exclusion or discrimination in this case. The plaintiffs argue that students at BCMS were excluded from educational opportunities on the basis of sex because "boys [were] excluded from the all-girls classes, while girls [were] excluded from the (separate and distinct) all-boys classes." Pl.'s Resp. to Mot. to Dismiss (DN 234) at 19. The plaintiffs' assertion that girls were deprived of the opportunity to be in a "boys' class" or boys were deprived of an opportunity to be in a "girls' class" is simply incorrect. All BCMS students could choose to participate in coeducational classes. Therefore, girls could choose to be in a class with boys and boys could choose to be in a class with girls. What students could not do is choose to be in a certain class, be taught by a certain teacher, or learn with a certain group of other students of the opposite sex. However, BCMS is required only to provide students substantially equivalent single-sex and coed classes. It is not required to provide students the classes, teachers, or classmates of their choice.

Coeducational classes (and thus the opportunity to learn alongside students of both the same and opposite sex) were clearly available to all students at BCMS. Under the plaintiffs' theory, however, this is not sufficient. The plaintiffs postulate that a given student may aspire to participate in a class of students all of the opposite sex, but would be precluded from doing so under the BCMS program. For instance, the plaintiffs offer the example of class representative S.E.A., stating that she "can show that she was treated differently from the boys in her class with whom she was

similarly situated but for their sex. To wit, she was barred from participation in the all-boys classes, because she is a girl, while the boys were not." DN 234 at 20.

The plaintiffs call this result "sex discrimination" or "sex segregation." However, to rectify this problem as the plaintiffs have framed it, S.E.A. would have to be allowed to participate in a "boys' class" as the sole female in the classroom. This is so because the presence of students of *both* sexes would constitute a coeducational class, an option that was offered to S.E.A. but one that the plaintiffs apparently find objectionable. To allow S.E.A. to participate in a single-sex "boys' class," then, the plaintiffs would necessarily have BCMS exclude all female students other than S.E.A. Interestingly, this scenario smacks of the very "sex segregation" the plaintiffs decry. Moreover, the absurdity of the plaintiffs' argument becomes evident when taken to its logical conclusion. The presence of a student in a class of students all of the opposite sex – for instance, S.E.A.'s participation in an all-boys' class – would render the class a *coeducational* class. Thus, a student who desires to learn in such a setting need only select the coeducational offering to achieve the same goal. The plaintiffs' claims of "discrimination" and "exclusion" are not supported by law, fact, or logic, and provide no basis for a finding of injury.

**B.**

Students may suffer concrete harm if they are not provided substantially equivalent coeducational classes when a single-sex program is offered in their school. This was the case in *Doe v. Vermilion Parish Sch. Bd.*,[8] which was recently decided by the Fifth Circuit Court of Appeals. In *Vermilion Parish*, a mother (known by the pseudonym Jane Doe) brought an action on behalf of her daughters (Joan and Jill Doe) to challenge an optional single-sex program implemented at Rene

---

[8]No. 10-30378, 2011 WL 1290793 (5th Cir. Apr. 6, 2011).

A. Rost Middle School in Louisiana. *See id.* at *1. The defendants argued that Jill, who had attended only coeducational classes during her time at Rost, lacked standing to challenge the school's single-sex program because she had not participated in it. *Id.* at *6. The Fifth Circuit Court of Appeals held that Jill had provided sufficient evidence that the single-sex program was harmful to the overall educational environment at the school, and therefore gave rise to injury even to students who did not participate in the program. *Id.* at *7.

The Court of Appeals identified specific shortcomings in the Rost program that rendered coeducational classes substandard, thus depriving students of substantially equal educational opportunities. For instance, there was some evidence that due to efforts by the school district, students with learning difficulties almost always ended up in coeducational classrooms, while "talented and gifted" students ended up in the single-sex classes. *Id.* at *3. Jill testified that her coeducational class used different subject-matter tests than the single-sex class and that her teacher read tests aloud for students. *Id.* at *7. Jill also stated that she was taunted because other students considered the coeducational class a "special needs" class. *Id.* The Court of Appeals agreed with Jill's argument that Jill had sufficiently claimed injury:

> [B]oth the coed and the same-sex classes are inferior to what would be available were this program not in place. Girls are effectively denied the benefits of being in the same classroom with boys. Though there is a coed class in which those benefits would be available, the argument is that the same-sex classes prevent quality coed classes from being offered. [Jill] also argues that girls are subjected to an unfavorable education and teaching methods based on stereotypes. There is some evidence to support that. She further alleges that her own coed classroom has been modified unfavorably by the imposition of sex sorting.

*Id.*

This case differs significantly from *Vermilion Parish*. While plaintiffs recite the mantra that single-sex offerings result in substandard coed education, there is simply no evidence in the record

to support such an argument. Notably, the plaintiffs fail to identify any facts showing that any educational opportunity was offered exclusively to boys, exclusively to girls, or exclusively to coeducational classes. Further, experts for both the plaintiffs and the defendants found little difference in the way the single-sex and coeducational classes were conducted, and no disparity was found in the content taught. *See* Report of Patricia Campbell (DN 234-17) at 4; Report of Kathleen Ronay (DN 219-15) at 16. Although both expert reports noted variations among (1) classroom management styles, (2) teaching methods used, and (3) the pace of progress through materials, both experts concluded:

> While there were differences among teachers, during the periods I observed there were no differences in the ways the single-sex and coed classes were conducted. The teachers used the same classroom set-up, the same text books, the same instructional strategies, and the same behavior management techniques for their coed and single-sex classes.

Campbell (plaintiffs' expert) Report, DN 234-17 at 4.

> Those teachers who teach both a co-ed class and a single sex class: offer the same curriculum to both classes; are using the same pacing (when and how long to teach a unit) for both types of classes; interact with their classes in the same demeanor; use the same instructional strategies for both; use the same formative (during the unit) and summative (the end of the unit) assessments. I saw no evidence in either type of single-sex classrooms that any stereotypical strategies are used for either girls or boys.

Ronay (defendants' expert) Report, DN 219-15 at 16.

The plaintiffs' claims of substandard or unequal educational opportunities as a result of the single-sex offerings are unsubstantiated. Unlike in *Vermilion Parish*, there is no evidence of harm to any student as the result of the optional single-sex program at BCMS. At this stage in the litigation, the plaintiffs may no longer rest on mere allegations, but must set forth specific facts demonstrating that the elements of standing have been met. *See Lujan, supra.* While their brief is

long on rhetoric, the plaintiffs simply have not met this burden here.

## C.

The plaintiffs further urge that the single-sex classes program produced a disparity in class size at BCMS that disadvantaged students who chose to enroll in coeducational classes, which were in some cases larger than coeducational classes.[9] This does not, however, establish that any of the plaintiffs suffered an injury in fact to a legally protected interest as a result of the BCMS program.

Although plaintiff J.J.N. stated that it is "harder to learn," in a larger class than in a smaller class, *see* J.J.N.'s Answers to Interrogatories and Requests for Production (DN 234-14) at 17, and plaintiff K.A.S. claimed that she "lost educational opportunities because it's harder to learn when there are more kids in the classroom," *see* K.A.S.'s Answers to Interrogatories and Requests for Production (DN 234-15) at 11, the record does not reflect that either J.J.N. or K.A.S. suffered any concrete educational detriment as the result of being in a "larger" class during the 2008-2009 school year. J.J.N. received all "A's" (the highest letter grades possible) during the 2008-2009 school year, *see* Deposition of J.J.N. (DN 219-19) at 54:23–55:11, and K.A.S.' grades remained consistent throughout her middle school career, including during the 2008-2009 school year. *See* Deposition of K.A.S. (DN 219-20) at 169:21–171:3. Therefore, despite the allegation that it was "harder to learn" in a coeducational class, neither J.J.N. nor K.A.S. has shown a cognizable injury resulting from the BCMS single-sex program.

Equivalent educational opportunities do not mandate identical classroom experiences. Thus,

---

[9]Plaintiffs cite evidence that the class sizes for eighth grade classes during the 2008-2009 school year ranged from 10-12 students in the all-boys classes, 24-28 students in the all-girls classes, and 20-31 students in the coeducational classes. DN 234 at 40–41.

the vague assertion that it was "harder to learn" is meaningless unless the plaintiffs have suffered the concrete and particularized injury that is necessary to confer standing.

Finally, we feel compelled to address the plaintiffs' haphazard wielding of certain emotionally charged terminology in their briefs. The plaintiffs contend that students were "classified" or "segregated" by sex. This contention is belied by the record. BCMS did not "classify" or "segregate" its students. Rather, BCMS afforded parents the option of selecting a single-sex or coeducational classroom environment for their children.

To "segregate," as that term has been used historically, means "to cause or force the separation of (as races or social classes) from the rest of society or from a larger group," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002). At BCMS, the single-sex or coeducational classrooms were not forced upon students. The choice was left to the discretion of parents, and participation in either classroom format was wholly voluntary. The plaintiffs' bald assertions of "classification" and "segregation" are nothing more than a vain attempt to cast a pall of unconstitutionality over the BCMS program.

In sum, the plaintiffs have failed to point to specific facts showing that they suffered a concrete and particularized injury to a legally protected interest as a result of BCMS' offering of optional single-sex classes. For the reasons stated above, the mere existence of an optional single-sex program in a public school does not establish an injury in fact. Further, to the extent the plaintiffs have attempted to allege specific facts regarding the effect of the BCMS program on their educational experience, they have failed. Nothing the plaintiffs point to demonstrates a concrete and particularized harm to any legally protected interest that was actual or imminent. *See Lujan, supra.* Accordingly, the court concludes that the class plaintiffs have failed to make an adequate showing

of standing on their own behalf and on behalf of the class members they represent. Their claims must be dismissed.

### III. 2007-2008 Damages Claims

The defendants seek summary judgment on the claims of plaintiffs A.N.A., S.E.A., J.J.N., K.A.S., Z.H.S., and S.L. for monetary damages for alleged injuries suffered during the 2007-2008 school year.

The defendants urge that these individuals have failed to identify compensable damages resulting from their educational experience at BCMS during 2007-2008. We agree. No genuine issue of material fact exists which would preclude summary judgment on these claims.

As the 2007-2008 school year commenced, BCMS students were assigned to classes without parents being afforded the option to select solely coeducational classes for their children. The BCMS administration was apparently unaware of newly-enacted federal regulations requiring participation in single-sex class offerings to be voluntary, and thus made class assignments as it believed appropriate. After the assignment plan was challenged, BCMS immediately sought guidance on the matter. Within approximately three weeks parents were afforded the opportunity to select single-sex or coeducational classes for all core academic classes for 2007-2008.

The only single-sex classes for which changes could not be accommodated were related arts classes. The scheduling of related arts classes, which consisted of nine-week sections of art, music, physical education and enrichment, could not be modified such that all students would receive the class time in these areas required by Kentucky's Core Content law.

To the extent that any of the six individual plaintiffs bases his or her claim for damages on challenges to class size, access to classes of the opposite sex, educational equivalence of classes, or

inherent inequality, these arguments have been addressed in detail and rejected earlier in this opinion.

As to particular, individualized injury claims of the individual defendants, the court concludes that none of the six plaintiffs has shown a compensable injury in this case.

A.N.A., S.L., and Z.H.S. were all assigned to single-sex classes and chose not to opt out of this assignment when given the choice to do so three weeks later. As they were given the choice to transfer but chose to remain where they had initially been placed, they do not state any compensable injury for the failure to afford them the choice of classes at the beginning of the year.

J.J.N.'s experience with a single-sex science class did not arise from an assignment at the beginning of the school year. Rather, in the spring of 2008, J.J.N. was afforded the opportunity to move to a higher level math class. In order to accomplish this change in his schedule, he chose to enroll in a single-sex science class. J.J.N. suffered teasing and bullying in this class and requested reassignment to a coeducational science class. This request was accommodated. The teasing and bullying has not been shown to have been caused by a single-sex environment. The anecdotal "boys will be boys" remark offered by J.J.N., Pl.'s Response (DN 237-2) at 10, is not a quotation attributed to any defendant and there is no citation to the record that this was the position taken by teachers or administration regarding conduct in all-boys classes. To the contrary, the record reflects that J.J.N. was also teased and bullied outside of the single-sex classroom.

S.E.A. was enrolled in a single-sex related arts class for the 2007-2008 school year, and K.A.S. took one single-sex enrichment class. S.E.A. has not articulated any particular injury allegedly suffered as a result of her participation in a single-sex related arts class.

K.A.S. participated in a single-sex enrichment ("skills") class in which she claims she was

injured because she was subjected to the "idle chatter" of girls and she felt "retarded" when she was "made to play with blocks." Pl.'s Response (DN 237-2) at 7. As established in the record, the enrichment class was offered as an opportunity to supplement the students' academic work.

K.A.S. has not alleged that exposure to the "idle chatter," *id.*, of girls was an experience unique to the all-girls classes. As exposure to such "idle chatter" could arguably result in any classroom where other girls were present, K.A.S. can show no "idle chatter" injury resulting from the single-sex environment.[10]

Further, the record reflects that "playing with blocks" was a math enrichment activity which K.A.S. felt was below her academic abilities. Thus the "retarded" feeling experienced by K.A.S. related to academic level and not to any perception concerning her gender. The fact that this math enrichment activity was offered in an all-female class is simply of no moment, as K.A.S. has not shown that this activity was offered only in all-girls classes or offered only to female students.

To the extent that K.A.S. would prefer to avoid "idle chatter" or "playing with blocks" by participating as the only girl in an all-boys class, such an argument is untenable, as explained elsewhere in this opinion.

For these reasons, we conclude that the individual claims of A.N.A., S.E.A., J.J.N., K.A.S., Z.H.S., and S.L. for damages are without merit and must be dismissed.

A separate order will issue in accordance with this opinion.

---

[10]The implication that "idle chatter" is a wholly female phenomenon is itself a gender-based stereotype, and inaccurate as well.